**No. 23-13433**

IN THE

# United States Court of Appeals

FOR THE ELEVENTH CIRCUIT

───────────────────────────

UNIVERSAL PROTECTION SERVICE, LLC,

*Plaintiff-Appellant,*

──v.──

JEFFREY R. BOHLING, AND
BOHLING PROTECTIVE SERVICES, LLC

*Defendants-Appellees.*

───────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

---

## BRIEF FOR PLAINTIFF-APPELLANT

---

Matthew D. Crawford
Matthew D. Treco
MARTENSON, HASBROUCK & SIMON LLP
2573 Apple Valley Road NE
Atlanta, Georgia 30305
(404) 909-8100
*Counsel for Plaintiff-Appellant*

November 21, 2023

Universal Protection Service, LLC
vs. Jeffrey R. Bohling and Bohling Protective Services, LLC
(Appeal No. 23-13433)

### APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cɪʀ. R. 26.1-2(a), Appellant Universal Protection Service, LLC certifies that the following individuals and entities have an interest in the particular outcome of the above-captioned case:

1. Balard, Alison M. (Counsel for Appellees/Defendants)

2. Bohling, Jackie A. (Member of Bohling Protective Services, LLC)

3. Bohling, Jeffrey R. (Appellee/Defendant)

4. Bohling Protective Services, LLC (Appellee/Defendant)

5. Brown, Hon. Michael L. (District Court Judge)

6. Crawford, Matthew D. (Counsel for Appellant/Plaintiff)

7. Martenson, Hasbrouck & Simon LLP (Counsel for Appellant/Plaintiff)

8. Taylor English Duma LLP (Counsel for Appellees/Defendants)

9. Treco, Matthew D. (Counsel for Appellant/Plaintiff)

10. Universal Group Holdings, LLC (A Corporate Parent of Appellant)

11. Universal Protection Service, LLC (Appellant/Plaintiff)

12. Universal Services of America, LP (A Corporate Parent of Appellant)

13. USA Intermediate, Inc. (A Corporate Parent of Appellant)

14. Wendel SE (MF:XPAR)

Universal Protection Service, LLC
vs. Jeffrey R. Bohling and Bohling Protective Services, LLC
(Appeal No. 23-13433)

Pursuant to FED. R. APP. P. 26.1 and 11th CIR. R. 26.1-3(b), Appellant

Universal Protection Service, LLC certifies that its corporate parents are Universal

Group Holdings, LLC, Universal Services of America, LP, and USA Intermediate,

Inc. Wendel SE (MF:XPAR), a French company traded on the Euronext Paris

Exchange, owns 10% or more of one or more of the foregoing corporate parents.

Respectfully submitted, this 21st day of November, 2023.

MARTENSON, HASBROUCK & SIMON LLP

Matthew D. Crawford
Georgia Bar No.190109
Matthew D. Treco
Georgia Bar No. 802181
2573 Apple Valley Road NE
Atlanta, Georgia 30309
T: (404) 909-8100
F: (404) 909-8120
mcrawford@martensonlaw.com
mtreco@martensonlaw.com

*Counsel for Appellant*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

In order to expedite the disposition of this appeal, Appellant does not desire oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement.................C-1

Statement Regarding Oral Arguments .........................................................................i

Table of Contents .................................................................................................... ii

Table of Authorities................................................................................................iv

Statement of Jurisdiction........................................................................................vi

Statement of Issues...................................................................................................1

Statement of the Case...............................................................................................2

Summary of the Argument......................................................................................10

Argument and Citation to Authority .....................................................................11

    **I.**    **The District Court Erred When It Found That Bohling's Text Messages to Customer "A" Did Not Constitute Solicitation Because, In So Doing, the District Court Failed to Construe the Concept of "Solicitation" In the Broadest Sense Possible As Required by Georgia's Restrictive Covenant Jurisprudence.**..................11

    **II.**    **The District Court Erred When It Found That Appellees' Provision of Business Proposals to Former Restricted Customers Merely Constituted "Accepting Business," Not Solicitation, Because It Failed to Assess These Business Development Efforts in the Broader Context of Bohling's Extensive Precursory Communications with These Customers.**..................16

        *A.*    *The District Court Concluded That the Business Proposals Constituted Accepting Business; Even Though, There Were No Offers to Accept.*..................18

[Table of Contents Continues on Following Page]

**III.  The District Court Erred When It Granted Appellees' Motion for Reconsideration and Found That Appellant Failed to Provide "Persuasive Evidence" Showing the Supreme Court of Georgia Would Reverse the Georgia Court of Appeals' Ruling in *NASB v. Wimmer, et al.* and Find That Covenants Not to Solicit Employees Do *Not* Require Territorial Restrictions.** ....................................................20

    *A.  Long-Standing Canons of Statutory Construction Require the Supreme Court of Georgia to Overturn NASB.* .................................21

    *B.  Georgia Public Policy Requires the Georgia Supreme Court to Overturn NASB.* ..............................................................................24

Conclusion ..............................................................................................26

Certificate of Service ..............................................................................27

# TABLE OF AUTHORITIES

## Cases

*Akron Pest Control v. Radar Exterminating Co., Inc.*,
216 Ga. App. 495 (1995).................................................................11, 12, 15, 16, 18

*American Anesthesiology of Ga. v. Northside Hosp.*,
362 Ga. App. 350 (2021)...........................................................................25

*Anderson v. United States*,
344 F.3d 1343 (Fed. Cir. 2003) ...............................................................18

*BRP Colleague Inc. v. Gillen*,
2023 WL 3641954 (N.D. Ga. Mar. 7, 2023)....................................11, 18

*Chaichimansour v. Pets Are People Too, No. 2*,
226 Ga. App. 69 (1997)............................................................................25

*CMGRP v. Gallant*,
343 Ga. App. 91 (2017)............................................................................25

*Edmondson v. Dyson*,
7 Ga. 512 (1849) ................................................................................22, 23

*Elan Corp., PLC v. Andrx Pharms., Inc.*,
366 F.3d 1336 (Fed. Cir. 2004) ...............................................................19

*Erler v. Hasbro, Inc.*,
506 F. Supp. 3d 1275 (N.D. Ga. 2020) ....................................................19

*Foremost Pro Color, Inc. v. Eastman Kodak Co.*,
703 F.2d 534 (9th Cir.1983) .....................................................................19

*Gallagher Benefit Servs. v. Campbell*,
528 F. Supp. 3d 1326 (N.D. Ga. 2021) ....................................................24

*GE Energy Power Conversion France SAS, Corp. v.
Outokumpu Stainless USA, LLC*,
140 S.Ct. 1637 (2020)...............................................................................22

iv

*Graham v. McKesson Information Solutions*,
279 Ga. App. 364 (2006) ..................................................................................21, 23

*H&R Block Eastern Enterprises, Inc. v. Morris*,
606 F.3d 1285 (11th Cir. 2010) ...............................................................................11

*Landgraf v. United States*,
151 Fed. Cl. 326 (Fed. Cl., 2020) ...........................................................................18

*Lifebrite Labs, LLC v. Cooksey*,
2016 WL 7840217 (N.D. Ga. Dec. 9, 2016) ............................................................12

*Marcoin, Inc. v. Waldron*,
244 Ga. 169 (1979) ..................................................................................................16

*North American Senior Benefits, LLC V. Wimmer*,
368 Ga. App. 124 (2023) .............................................................3, 20, 22, 23, 24, 25

*Pittman by Pope v. Secretary, Florida Dept. of Health & Rehabilitative Services*,
998 F.2d 887 (11th Cir. 1993) ..................................................................................12

*Sanford v. RDA Consultants*,
244 Ga. App. 308 (2000) ..........................................................................................25

*Sysco Food Servs. Of Atlanta, Inc. v. Chupp*,
225 Ga. App. 584 (1997) ..........................................................................................11

*Wind Logistics Pro., LLC v. Universal Truckload, Inc.*,
2019 WL 4600055 (N.D. Ga. Sept. 23, 2019) .................................................13, 15

*Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*,
746 F.3d 1008 (11th Cir. 2014) ...............................................................................21

**Statutes**

O.C.G.A. § 13-8-53 .............................................................................................22, 23

O.C.G.A. § 13-8-54 ..................................................................................................24

## <u>STATEMENT OF JURISDICTION</u>

The United States District Court for the Northern District of Georgia (the "District Court") exercised jurisdiction over the instant action under 28 U.S.C. §§ 1331 and 1332.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1). Appellant Universal Protection Service, LLC ("Appellant") timely filed its notice of appeal with the District Court on October 11, 2023. Appellant timely filed an amended notice of appeal with the District Court on October 26, 2023. Appellant appeals the District Court's May 22, 2023 Order (the "May Order") denying in part, and granting in part, Appellant's Motion for Preliminary Injunction and the District Court's October 5, 2023 Order granting Appellees' timely filed June 15, 2023 Motion for Reconsideration of the May Order.

## **STATEMENT OF THE ISSUES**

1. Whether the District Court erred when it found that Appellees' provision of business proposals to customers did not violate Appellee Jeffrey R. Bohling's covenant not to solicit customers because this conduct constituted "accepting business."

2. Whether the District Court erred in its finding that Appellant could not show a substantial likelihood on the merits as to its claim for breach of the covenant not to solicit customers because the District Court failed to construe the term "solicitation" in the broadest sense possible—as required by Georgia restrictive covenant jurisprudence—when it analyzed text messages sent by Appellee Jeffrey R. Bohling to certain customers, determining these messages did not constitute solicitations.

3. Whether the District Court erred when it granted Appellees' Motion for Reconsideration, finding that Plaintiff had not provided "substantial evidence" that the Supreme Court of Georgia would conclude that covenants not to solicit employees do not require territorial restrictions and reverse the Georgia Court of Appeals ruling in *North American Senior Benefits, LLC v. Wimmer*.

## STATEMENT OF THE CASE

This appeal arises out of claims that Appellee Jeffrey R. Bohling ("Bohling") breached certain restrictive covenants he agreed to in exchange for a significant share of the sales proceeds that were generated when Appellant acquired the company he was leading. Appellant sought to enforce these covenants by filing a lawsuit in the District Court on February 27, 2023. (Doc. 1.) At the same time, Appellant sought emergency and preliminary injunctive relief. (Doc. 3.)

## I.      Proceedings in the District Court.

On March 2, 2023, the District Court held a hearing on Appellant's request for emergency injunctive relief. (Doc. 12.) On March 6, 2023, it entered a consent temporary restraining order that enjoined Bohling from soliciting certain of Appellant's customers and employees. (Doc. 18.)

On March 27, 2023, the District Court held an all-day evidentiary hearing on Appellant's request that the temporary restraining order be converted to a preliminary injunction. (Docs. 33, 42.)

On May 22, 2023, after consideration of the testimony and evidence presented during the hearing, and the parties post-hearing briefs [Docs. 40, 49, 50], the District Court granted, in part, and denied, in part, Appellant's request for preliminary injunctive relief. (Doc. 53.) The District Court enjoined Appellees from soliciting certain of Appellant's employees but declined to enjoin Appellees from soliciting

certain of Appellant's customers, concluding that the evidence presented did not amount to solicitation. (*See* Docs. 53 at 40.)

On June 15, 2023, Appellees filed a motion for reconsideration [Doc. 56], arguing that the Georgia Court of Appeals ruling in *North American Senior Benefits, LLC vs. Wimmer*, 368 Ga. App. 124 (2023), *pet. for cert. filed* (Ga. Jul. 17, 2023) (S23C1146) rendered Appellant's covenant not to solicit employees unenforceable because it lacked a territorial restriction. (*Id.*) Appellant opposed the motion [Doc. 57], and the District Court granted it on October 5, 2023, suspending that portion of its May Order enjoining Appellees' solicitation of employees. (Doc. 72.)

## II.    Statement of Facts.

### A.    *Appellant's Acquisition of Bohling's Former Company & Bohling's Related Post-Employment Obligations.*

Appellant is a security services company, providing manned guarding and other security solutions to a wide range of industries. (Doc. 41 at 74:7–20.) In or around September of 2021, Appellant entered into an agreement to purchase substantially all the assets of Norred & Associates, Inc. ("Norred"). (*Id.* at 151:6–16.) Norred provided manned guarding services like Appellant. (*Id.* at 132:8–11.)

In connection with Appellant's acquisition of Norred's assets, Bohling entered into certain written agreements with Norred, including a July 26, 2021 Sale Bonus Agreement (the "Bonus Agreement"). The Bonus Agreement entitled Bohling to 13% of the net proceeds of the sale to Appellant. (Docs. 41 at 145:22–147:18; 35-1

at AUSS_000001.) Bohling was Norred's Chief Operating Officer for nearly fifteen years and oversaw all aspects of Norred's manned guarding business. (Docs. 41 at 139:23–140:9; 37-1 at AUSS_000035.) To date, Bohling has been paid significant monies under the Bonus Agreement. (Doc. 44 at 147:15–18.) In exchange for this opportunity to enrich himself, Bohling agreed to abide by the terms of an Employment Covenants Agreement (the "Covenants Agreement"). (Docs. 41 at 145:22–147:18; 35-1 at AUS_000011–17.) Germane to this appeal, the Bohling Covenants Agreement set forth restrictions on Bohling's solicitation of certain Norred customers and employees for two-years following the cessation of his employment. (Doc. 35-1 at AUS_000012 [¶¶ 3–4].) As modified by the District Court in its May 22, 2023 Order, these respective restrictions read as follows:

> During the Restricted Period [24 months], You shall not, on Your own behalf or on behalf of any person or entity, solicit, ~~encourage, cause or attempt to cause~~ any Customer to purchase any services or products from any business other than the Company which are competitive with or a substitute for the Company's services or products or undertake any other activity that negatively impacts the business relationship between the Company and a Customer, Prospective Customer, or any other third party. The prohibitions in this Paragraph apply only to Customers, Prospective Customers or other third parties about whom You obtained Confidential Information or Trade Secrets as a result of Your association with the Company or with whom You had material contact during the last twelve (12) months of Your employment.

(Doc. 53 at 10–11.)

> During the Restricted Period, You shall not, on Your own behalf or on behalf of any person or entity ~~(a) hire or engage as an employee or as an independent contractor any person employed by the Company;~~ (b)

-5-

recruit, solicit or encourage any employee or independent contractor to leave his or her employment or engagement with the Company; ~~and/or (c) hire or engage any person employed by the Company at any point during Your last six (6) months with the Company; provided, however, that nothing in this Section 4 will prohibit any person who was formerly employed by the Company to respond to a general advertisement of employment opportunities published by You and not targeted to any specific person or group of persons.~~

(Doc. 53 at 20.) The District Court correctly found that the above restrictions will remain in effect through February 4, 2024. (Doc. 53 at 3–4.) As part of the sale, Norred assigned its rights and obligations under the Bonus Agreement and Covenants Agreement to Appellant. (Docs. 41 at 151:2–16; 35-1 at AUSS_000013 [¶ 9]; [ AUSS_000013 [¶ 18].)

B.    Evidence Presented to the District Court

1.    *Evidence of Soliciting Customers.*

In the year following the cessation of his employment with Norred, Bohling engaged in extensive text message conversations with former Norred (then Appellant's) customer representatives, in which he reminisced fondly about their prior business relationships, discussed the future (including his company, Appellee Bohling Protective Services, LLC ("BPS")), discussed the security services offered by Appellants and competitive alternatives to same, among other things. (*See e.g.,* Docs. 37-6, 37-7, 37-8, 37-12, 37-13.)

In one such conversation on June 28, 2022—*less than six months* after leaving Norred—a representative for Customer X ("Executive X") stated "I'm looking

forward to our meeting . . . Looking forward to Bohling Security." (Doc. 37-13 at BOHLING_000622.) Bohling responded fifteen minutes later, inviting the customer representative to get coffee. (Doc. 37-13 at BOHLING_000623.) Bohling corresponded with Executive X's colleague, Executive Y, over the same period and with similar frequency. (*See* Doc. 37-12.)

On November 12, 2022, Bohling engaged in a text message conversation with a representative ("Executive A") of a former Norred customer (then Appellant's customer) ("Customer A"), expressing his desire for her business. He stated:

> *I always enjoyed having you as a client. You always communicated what you wanted. [Y]ou were always fair and wonderful to work for*.

(Doc. 37-6 at BOHLING_001873–74.) Understanding that Bohling's comment constituted the expression of a desire to do business with her, Executive A replied: "You have no idea how excited I am to be your client again very soon." (*Id.*) Indeed, Bohling confirmed in his testimony before the District Court that Executive A knew at this time that Bohling would be "opening up" BPS. (Doc. 41 at 216:9–12.) In other words, Bohling understood that his message would not be perceived as something merely in the abstract. Further to that point, he testified that he understood Executive A's message to mean that she could not "wait to have [Bohling] run [Customer A's business]." (*Id.* at 216:11–12.) With that understanding in mind, he confirmed that he and Executive A were operating with the same set of assumptions (i.e., they both

desired to do business with one another through Bohling's new company), replying as follows: *I hope that happens as well.* (Doc. 37-6 at BOHLING_001873–74.)

In December of 2022, approximately one month after the above solicitation, Bohling had a lunch meeting with Executive A and her colleague ("Executive B"), the "decision maker" for Customer A's security needs. (Doc. 37-6 at BOHLING_001879–1882; Doc. 41 at 217:12–17.) Shortly after this meeting, on January 9, 2023, Bohling transmitted a follow-up text message to Executive A, providing the full the legal name of BPS and its physical address. (Doc. 37-6 at BOHLING_001885.) Executive A and Executive B needed this information to "start work on the MSA." (*Id.*)[1] In this same conversation, Bohling highlighted BPS's improved ability to recruit security officers given its future office location. (*Id.* at BOHLING_001886–1887.)

On February 5, 2023, Bohling updated his LinkedIn profile, publicizing the existence of BPS. (Doc. 41 at 199:8–200:10.). In the days that followed, he emailed multiple former Norred (then Appellant's) customers business proposals on behalf of BPS, discussing pricing terms and advertising the benefits of doing business with BPS. (*See e.g.*, 37-2, 37-9.)

---

[1] (Doc. 41 at 218:23–25 (Bohling testifying that it is his understanding that MSA refers to Master Services Agreement).)

2.    *Evidence of Soliciting Employees.*

In early February 2023, Bohling visited a former Norred (then Appellant's) customer site in Marietta, Georgia to recruit former Norred security officers, Marlondo Watson ("Watson") and Joh Ediagbonya ("Ediagbonya") on behalf of BPS. (Docs. 35-2 and 35-3) Each of these security officers averred in sworn declarationS that in early February 2023 they were called into a meeting with Bohling at their place of employment. (*See generally id.*) Bohling did not dispute meeting with these individuals. (Doc. 41 at 182:2–4; 183:21–23.) Bohling confirmed that he was introduced by Watson and Ediagbonya's supervisor as the former president of Norred and that Bohling then discussed his professional biography. (Doc. 41 at 190:19–25.) Bohling also admitted that he brought employment applications to the meeting, which were handed out to some security officers in attendance. (Doc. 41 at 191:16–18.) It was apparent to Watson and Ediagbonya that the sole purpose for calling the meeting was to encourage them to join BPS. (Doc. 35-2 and 35-3.) In the May Order, the District Court correctly found that Appellants showed a likelihood of success on its claim that Bohling had solicited these employees in violation of the Covenants Agreement. (Doc. 53 at 35–37.)

## SUMMARY OF THE ARGUMENT

This appeal primarily concerns the violation of covenants not to solicit customers; specifically, asking what constitutes the outermost metes and bounds of a solicitation. Under Georgia law, the concept of "solicitation" must be construed as broadly as possible. This means that actions constituting solicitation are not limited to a particular formula, approach, or method. They need not conform to the proverbial "sales pitch."

Ultimately, the question is whether the action was *intended* to persuade the customer to give their business. There is no requirement that the request be explicit. It could very well be implied. For example, a salesperson might engage in solicitation merely by flattering the prospective customer—never mentioning the product or service for sale. By creating positive feelings in the customer, the salesperson has predisposed the customer to do something nice for the salesperson in return, including giving them their business.

On the other hand, the District Court appeared to hold that solicitations are limited to particular approaches and methods, and actions that do not conform to the proverbial "sales pitch" are not to be regarded as solicitations. Not only does this approach ignore Georgia law, but it ignores the myriad of persuasive techniques used in sales and business development, which techniques Georgia law clearly recognizes with its requirement that the concept of solicitation be broadly construed.

-10-

## ARGUMENT AND CITATION TO AUTHORITY

**I.    The District Court Erred When It Found That Bohling's Text Messages to Customer "A" Did Not Constitute Solicitation Because, In So Doing, the District Court Failed to Construe the Concept of "Solicitation" In the Broadest Sense Possible as Required by Georgia's Restrictive Covenant Jurisprudence.**

"A non-solicitation covenant . . . is designed primarily to protect the employer's investment of time and money in developing customer relationships, prohibit[ing] an employee from soliciting the employer's clients for a limited time." *H&R Block Eastern Enterprises, Inc. v. Morris*, 606 F.3d 1285, 1293 (11th Cir. 2010). Illustrating the importance of protecting these investments, Georgia law does not define solicitation narrowly. Doing so would afford employers less protection. Instead, "Georgia law is clear that solicitation *must be broadly defined*." *BRP Colleague Inc. v. Gillen*, No. 1:20-cv-03695, 2023 WL 3641954, at *11 (N.D. Ga. Mar. 7, 2023) (emphasis added); *see e.g., Akron Pest Control v. Radar Exterminating Co., Inc.*, 216 Ga. App. 495, 497, 455 S.E.2d 601 (1995) (explaining breaching a non-solicitation restriction requires "some affirmative act on [the employee's] part that could be considered solicitation *in the broadest possible sense*") (emphasis added); *Sysco Food Servs. Of Atlanta, Inc. v. Chupp*, 225 Ga. App. 584, 588, 484 S.E.2d 323 (1997) (explaining that "[a]n 'indirect' solicitation occurs when the former employee undertakes some affirmative action . . . that could be considered a solicitation in the *broadest possible sense*") (emphasis added). Plainly speaking,

"[t]o solicit is to use some sort of salesmanship, to encourage and persuade another to do something." *Lifebrite Labs, LLC vs. Cooksey*, No. 1:15-cv-4309-TWT, 2016 WL 7840217, at *8 (N.D. Ga. Dec. 9, 2016). At bottom, within the framework of "solicitation's" liberal construction, the question before this Court is whether Bohling's conduct was "intended to and calculated to incite the act of giving" business. *Akron Pest Control*, 21 Ga. App. at 497 (listing actions that should be considered solicitation). The evidence shows that it was.

Contrary to Georgia law, the District Court defined "solicitation" narrowly, and placed other improper limitations on the term's meaning, when it found Appellant failed to demonstrate a likelihood of success on its claim that Bohling's communications with customers did not constitute solicitations in violation of the Covenants Agreement. For this reason, the District Court's findings in this regard are not owed any deference. *Pittman by Pope v. Secretary, Florida Dept. of Health & Rehabilitative Services*, 998 F.2d 887, 889 (11th Cir. 1993) (explaining that denials of a "preliminary injunction based on an error of law" are reviewed "without deference to the court's determination of the legal issue").

On November 12, 2022, Bohling messaged Executive A, complimenting her on her character—not as a friend or as a person in general—but *as a customer*. (Doc. 37-6 at BOHLING_001873–74.) As shown by Executive A's responses to Bohling's communications, Bohling's sworn testimony, and the District Court's own findings,

there is no question that Bohling's message was calculated to incite Customer A to give BPS its business. Executive A's response expresses excitement about being Bohling's customer "very soon." (Doc. 37-6 at BOHLING_001873–74.) This is a direct response to the implied call to action in Bohling's initial message. Bohling then echoed the customer's sentiment expressing "hope" for the same result, validating Executive A's response. (*Id.*) Bohling described the response thusly: Executive A "knew I was going to be opening up and she said she can't wait to have me run their business." (Doc. 41 at 216:10–12.) Even the District Court appeared to recognize the "intent" element of solicitation in this exchange, finding that it "show[s] that Bohling was at least contemplating a business relationship with one of Norred's former customers in November 2022." (Dkt. No. 55 at 34.)

Despite the District Court's finding, and the unobjectionable notion that flattery is a trademark tool of persuasion in a salesman's arsenal, the District Court rejected the idea that this exchange constituted a solicitation. It concluded that there was no clear evidence of solicitation because the messages "do not show whether Bohling or Customer A initiated the *formation* of a business relationship." (Doc. 53 at 34.) However, "[s]olicitation does not require confirming business, only actions and conduct *intended to* incite the formation of a business relationship." *Wind Logistics Pro., LLC v. Universal Truckload, Inc.*, No. 1:16-CV-00068, 2019 WL 4600055, at *7 (N.D. Ga. Sept. 23, 2019) (emphasis added). An unsuccessful

solicitation is not a defense to conduct that otherwise violates the Covenants Agreement—the lack of success limits damages, not liability. *See id.*

In January 2023, Bohling messaged Executive A, again, explaining his strategy for enhancing his recruiting efforts. (Dkt. 37-6 at 35–36.) Bohling highlighted the location of the office space he was considering leasing and the value it added for recruiting purposes. (*Id.*) This information was not arbitrary. During the District Court's evidentiary hearing, it heard testimony that customers seeking security services are keen to understand the ability of the service provider to recruit and staff a customer site. (Doc. 41 at 78:23–13.) Without sufficient staff, a provider cannot offer security services. (*See id.* at 83:14–23 (explaining efforts to hire existing security staff when taking over new accounts).) Addressing a well understood customer requirement (or concern)—as Bohling does here—is of course designed to persuade a customer to give its business by fostering confidence in the prospective service provider.

Despite engaging in out-and-out salesmanship in this instance alone, the District Court reasoned that this did not constitute solicitation because Bohling did not state he would be "providing the same level of services with BPS as with Norred" and did not specify whether "BPS would be a security rather than a staffing company." (Dkt. 53 at 33.) First, the Covenants Agreement prohibits him from soliciting customers "to purchase any services or products . . . which are competitive

-14-

with *or a substitute for* the Company's services or products." (Doc. 35-1 at AUS_000012 [¶ 3] (emphasis added).) Therefore, specifying whether BPS was a security versus a staffing company is a distinction without a difference and not a necessary element of a solicitation. The District Court's attempt to draw this distinction ignores the plain language of Bohling's restrictive covenant and, as seen with other examples above, is inconsistent with the legal requirement in Georgia that solicitation be construed broadly.

Further to this point, a solicitation "requires no particular degree of importunity, entreaty, imploration, or supplication." *Akron Pest Control*, 216 Ga. App. at 497. There is no requirement that a solicitation be a rote request to "please purchase product 'Y' or service 'Z' "—any deviation from this express and mechanical call to action not constituting a solicitation. Few solicitations operate this way, which the law clearly recognizes. Many of the most effective solicitations draw their persuasive strength from the art of subtlety. No one likes to feel like they are being "sold to." Despite these realities, and contrary to Georgia law, the District Court found that a solicitation does require a particular degree of imploration; that is, it must be a specific pitch for business outlining one's wares. Georgia law is not so demanding; otherwise, the requirement that "solicitation" be liberally construed would be meaningless. As noted, above, the action need only be "intended to incite the formation of a business relationship." *Wind Logistics Pro., LLC*, 2019 WL

4600055 (citing *Akron Pest Control*, 216 Ga. App. at 497) (finding communications about the ability to successfully staff the competing business constituted solicitation). Had the District Court correctly construed the concept of solicitation broadly, the inexorable conclusion would have been that Appellant had demonstrated a likelihood of success on the merits of its claim that Bohling's text messages to Executive A constituted solicitations. It was error to find otherwise.

## II. The District Court Erred When It Found That Appellees' Provision of Business Proposals to Former Restricted Customers Merely Constituted "Accepting Business," Not Solicitation, Because It Failed to Assess These Business Development Efforts in the Broader Context of Bohling's Extensive Precursory Communications with These Customers.

As with the text messages between Bohling and Executive A, the District Court failed to construe solicitation broadly and analyze the business proposals Bohling provided to Customer X [Doc. 37-9] in the broader context of his earlier communications with Executives X and Y [Docs. 37-8 and 37-13]. It is true that "[m]erely accepting business that [the employee] was forbidden otherwise to seek out for a period of time does not in any sense constitute a solicitation of that business." *Akron Pest Control*, 216 Ga. App. at 497 (*citing Marcoin, Inc. v. Waldron*, 244 Ga. 169, 171(1) (1979)). However, a court should not reach that conclusion unless "the evidence presented show[s] . . . that [the employee] in no way sought out the former [] customers." *Id.* at 495. The evidence presented to the District Court shows just the opposite.

-16-

Bohling routinely sought out Customer X in the months leading up to the provision of the business proposal. (Docs. 37-8 and 37-13.) He messaged Executives X and Y almost once a month beginning in January 2022, which, ultimately, led to the business proposal he transmitted on February 9, 2022. (Doc. 37-9.) Recall that in June 2022, Executive X stated "he was looking forward to" Bohling's new company and his meeting with Bohling. (Doc. 37-13 at BOHLING_000622.) It would, therefore, be reasonable to infer that Bohling's provision of the business proposal on February 9 was the natural consequence of Bohling's earlier communications with Customer X through Executives X and Y.  The District Court appears to have concluded that the provision of this business proposal (and others in the record) constituted accepting business simply because Bohling prefaced the cover email to which each proposal was attached with self-serving language, including:

- "It was nice hearing from you the other day. Per your request . . ."[1]

- "Thank you for reaching out today."[2]

*See* Dkt. 53 at 28 (finding "it appears from all three emails that Bohling was sending business proposals to ex-Norred clients at those clients' request"). However, the District Court's conclusion is in error because it focused on these cover emails to the

---

[1] Doc. 37-9 at BOHLING_000253.
[2] Doc. 37-11 at BOHLING_000096.

exclusion of earlier repeated communications, which were intended to incite the formation of a business relationship. *See BRP Colleague Inc.*, 2023 WL 3641954 at *12 (analyzing a chain of events to conclude that a jury could infer that solicitation occurred). Stated another way, despite the absence of a finding that Bohling "in no way sought out the former [] customers who subsequently did business with" him, *Akron Pest Control*, 216 Ga. App. at 495—and contrary to record evidence showing Bohling actively and repeatedly sought out these customers—the District Court found that the provision of these business proposals could not constitute solicitation. This was error.

A.    *The District Court Concluded That the Business Proposals Constituted Accepting Business; Even Though, There Were No Offers to Accept.*

To conclude, as the District Court did, that the multiple business proposals submitted by Bohling,[3] constitute mere acceptance of business is to ignore what it means to accept business, and, conversely, what it means to offer business. Without an offer, there can be no acceptance. *See Landgraf v. United States*, 151 Fed. Cl. 326 (Fed. Cl., 2020) (citing *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)) (finding that "[a]cceptance is the manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer") (internal quotations omitted). And for a communication to constitute an offer, it must include

---

[3] *See* Docs. 37-2, 37-9, and 37-11.

material terms (that can be accepted). *See Elan Corp., PLC v. Andrx Pharms., Inc.*, 366 F.3d 1336, 1341 (Fed. Cir. 2004). Absent such terms, the communication does not create a power of acceptance in the recipient. *See Foremost Pro Color, Inc. v. Eastman Kodak Co*., 703 F.2d 534, 539 (9th Cir.1983).

Bohling never "accepted business" because no customer presented him with an offer to do business. Absent from the record is any communication in which a prospective customer presented Bohling with business terms for him to accept (e.g., pricing). On the other hand, the record shows Bohling presenting proposals with pricing and staffing terms for each customer to accept. (*See e.g.,* Docs. 37-2, 37-9, and 37-11.) And with each proposal, Bohling routinely thanked the customer for "considering" BPS, which language further demonstrates that the customer was not an offeror. (*See e.g.,* Doc. 37-2.) Rather, this word signaled Bohling's understanding that the customer did not "intend to conclude [the] bargain until [it had] made further manifestation of" its own acceptance. *See Erler v. Hasbro, Inc.*, 506 F. Supp. 3d 1275, 1287 (N.D. Ga. 2020) (explaining that statements do not constitute offers if the counterparty has this understanding). Stated another way, Bohling understood that the customer had not made any offers that he could accept and bind them to. Necessarily then, the purpose of Bohling's various communications was to extend offers to do business (i.e., solicit), not to accept business.

The District Court rejected this argument, stating it "does not understand 'acceptance' in this context to have the same technical meaning as it does in contract law because that would require an ex-Norred customer, out of the blue and without any prior communication, to serve Bohling with a finished, already signed contract." (Doc. 53 at 29.) However, nothing would prevent a customer from serving Bohling with a communication that clearly articulated its needs (e.g., number of security guards, budget,) and inquiring whether Bohling could meet them. As noted, above, nothing in the record demonstrates that such a communication was ever transmitted. Accordingly, Bohling is the party that made the offer to do business, and it was incumbent upon the customer to accept that offer. This is clearly solicitation.

**III.    The District Court Erred When It Granted Appellees' Motion for Reconsideration and Found That Appellant Failed to Provide "Persuasive Evidence" Showing the Supreme Court of Georgia Would Reverse the Georgia Court of Appeals' Ruling in NASB v. Wimmer, et al. and Find That Covenants Not to Solicit Employees Do Not Require Territorial Restrictions**

The District Court correctly found that Bohling solicited employees in violation of his restrictive covenants and on that basis entered an injunction prohibiting this conduct. (Doc. 53 at 35–38.) However, it later granted Appellees' Motion for Reconsideration (Doc. 56), suspending the injunction. (Doc. 72.) The District Court did *not* reconsider its factual finding that Bohling had solicited employees. (*See id.*) Appellee's motion argued that the Georgia Court of Appeals ruling in *North American Senior Benefits, LLC v. Wimmer*, 368 Ga. App. 124, 889

S.E.2d 361 (2023), *pet. for cert. filed* (Ga. Jul. 17, 2023) (S23C1146), which found that covenants not to solicit employees require territorial restrictions, constituted an intervening change in the law, and because Bohling's covenant not to solicit employees lacked a territorial restriction, it was unenforceable. (*See generally* Doc. 56.)

While federal courts sitting in diversity are "bound to adhere to decisions of the state's intermediate appellate courts" in the absence of a ruling from the highest court, an opposing party need only offer "*some* persuasive indication that the state's highest court would decide the issue otherwise" to defeat a motion for reconsideration. *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1021 (11th Cir. 2014). The District Court erred when it found that Appellant's failed to make this showing, holding that Appellant failed to offer persuasive evidence—a seemingly higher standard than the law requires.

> A. *Long-standing Canons of Statutory Construction Require the Supreme Court of Georgia to Overturn NASB.*

"[A]ppellate courts must construe statutes to give sensible and intelligent effect to all of their provisions and to refrain from any interpretation which renders any part of the statutes meaningless." *Graham v. McKesson Information Solutions*, 279 Ga. App. 364, 366 (2006) (citations and punctuation omitted). In other words, courts may not construe a statute in manner that "reads out" another provision. Conversely, courts may not supply a term that is not found in the statute. *See*

*Edmondson v. Dyson*, 7 Ga. 512, 515 (1849). "A *casus omissus* can in no case be supplied by a Court of Law." *Id*.

The *NASB* court ignored these bedrock principles when it held that the RCA sets forth a *per se* requirement that covenants restricting the solicitation of employees must contain *express* territorial restrictions. *See NASB*, 368 Ga. App. at 129–130. Even though the RCA contains no such requirement or language on its face, the *NASB* court reasoned by inference that language found in O.C.G.A. §§ 13-8-53(c)(1) and 13-8-53(b) compel the conclusion that an *express* territorial restriction be "read in" to O.C.G.A. § 13-8-53(a). *See NASB*, 368 Ga. App. at 128–129. This is a clear violation of the principle announced in *Edmonson*. The *NASB* court was required to take the RCA as the Georgia legislature "made it," and was not permitted to supply a new term "by reference to the other section[s] of" the RCA. *Edmonson*, 7 Ga. at 515. Indeed, the RCA's phrase, "reasonable . . . geographic area" does not address whether an explicit territorial description is required at all. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637, 1645 (2020) (explaining a "matter not covered is to be treated as not covered"). Even the *NASB*'s purported reference to other principles of statutory construction (i.e., *expressio unius est exclusio alterius, expressium facit cessare tacitum*) makes little sense. *See NASB*, 368 Ga. App. at 129–130. Application of these principles lead to the exclusion *not* inclusion of terms. By ignoring these legal

principles—which still govern in the State of Georgia—and supplying a new term out of whole cloth, the *NASB* court has made law. *See Edmonson*, 7 Ga. at 515. It cannot do this. *See id.*

The consequences of the *NASB* court acting as a legislative body begets violations of additional canons of statutory construction. The RCA provides that "[w]henever a description of . . . geographic areas [] is required . . . *any description that provides fair notice of the maximum reasonable scope of the restraint shall satisfy such requirement*[.]" O.C.G.A. § 13-8-53(c)(1) (emphasis added). Here, again, the *NASB* court's holding deprives "any description" of its plain meaning by requiring that "any description" not be just *any* description at all; rather, it must be an *express territorial* description. *See Graham*, 279 Ga. App. at 366 (requiring that courts "refrain from any interpretation which renders any part of the statutes meaningless").

The Georgia Supreme Court will not abide these obvious contraventions of multiple statutory canons. Instead, it is likely to find that where the legislature chose not to explicitly require an express territorial description, none is required *per se* and "any description" means just that—where a restrictive covenant restricts people (as opposed to competition), a reasonable description of the people gives "fair notice to the parties, thereby satisfying the purpose of the [RCA]." *NASB*, 368 Ga. App. at 135 (Markle, J. dissenting).

B.    *Georgia Public Policy Requires the Georgia Supreme Court to Overturn NASB.*

The *NASB* court's contravention of the above legal principles had the dual effect of ignoring Georgia public policy concerning restrictive covenants—including those restricting solicitations of employees. The RCA itself requires that a court's interpretation of restrictive covenants "comport with the reasonable intent and expectations of the parties to the covenant and in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement." O.C.G.A. § 13-8-54(a). Indeed, the RCA's enactment "represented a sea change" from Georgia's prior hostility to restrictive covenants. *Gallagher Benefit Servs. v. Campbell*, 528 F. Supp. 3d 1326, 1337 (N.D. Ga. 2021). The *NASB* ruling disregards these fundamental principles entirely and appears to act as if hostility remains.

This is best demonstrated by the absurd results that the *NASB* ruling will produce, whereby otherwise reasonable covenants designed to protect legitimate business interests will be deemed *per se* unenforceable because they lack an express territorial restriction. For example, if a restrictive covenant prohibits an employee from soliciting John, Sarah, Joseph, and Lauren for employment, there is no doubt that the reasonable intent and expectation of the parties is to restrict solicitation of these individuals. Despite this, *NASB* would find this restriction *per se* unenforceable; even though, a "territorial limit would be largely (if entirely)

-24-

superfluous, as the very nature of the covenant[] at issue . . . [would be] necessarily narrowly limited in a manner that would be largely analogous to a territorial limitation. *NASB*, 2023 WL 3963931 at \*8 (Markle, J. dissenting) (citing *American Anesthesiology of Ga. v. Northside Hosp.*, 362 Ga. App. 350, 362–363, 867 S.E.2d 531 (2021)). Indeed, numerous pre-RCA cases upheld non-recruitment provisions that did not include an express geographic limitation. *See e.g., CMGRP v. Gallant*, 343 Ga. App. 91, 96, 806 S.E.2d 16 (2017); *Sanford v. RDA Consultants*, 244 Ga. App. 308, 311, 535 S.E.2d 321 (2000); *see also Chaichimansour v. Pets Are People Too, No. 2*, 226 Ga. App. 69, 71, 485 S.E.2d 248 (1997) ("If the scope of prohibited behavior is narrow enough . . . the covenant may be reasonable even if it has no territorial limitation."). The Georgia Supreme Court is likely to look to these cases and their rationales as policy guideposts that will direct it to overturn *NASB* and avoid the absurd results it would otherwise produce.

While the District Court may have found that the foregoing does not constitute persuasive *evidence*, Appellant argues that it does not constitute *some* persuasive *indication* that the Georgia Supreme Court will overturn *NASB*. Accordingly, it was an abuse of discretion for the District Court to grant Appellees' Motion to Reconsider.

## CONCLUSION

Based on the foregoing, Appellant asks that the Court reverse the District Court's finding that Appellant did not show a likelihood of success on the merits of its claims that Bohling solicited customers in violations of his restrictive covenants; reverse the District Court's finding that Appellant's failed to provide some persuasive indication that the Georgia Supreme Court will overturn *NASB*; and remand the matter with instructions that the District Court grant Appellant preliminary injunctive relief consistent with these corrected findings.

Respectfully submitted, this 21st day of November, 2023.

MARTENSON, HASBROUCK & SIMON LLP

Matthew D. Crawford
Georgia Bar No. 190109
Matthew D. Treco
Georgia Bar No. 802181
2573 Apple Valley Road NE
Atlanta, Georgia 30309
T: (404) 909-8100
F: (404) 909-8120
mcrawford@martensonlaw.com
mtreco@martensonlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2023, I served the within and foregoing Brief of Appellant on the attorneys of record set forth below by causing a copy of the same to be electronically uploaded to the Court's electronic case filing system and by this day placing paper copies with a third-party commercial carrier to be delivered no later than three (3) days from the above date.

Alison M. Ballard
Nicholas F. McDaniel
TAYLOR ENGLISH DUMA, LLP
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339

Matthew D. Treco